C. W. HILL, TRADING AND DOING BUSINESS AS HILL BROTH-
ERS, *Plaintiff in Error*, v. B. C. PEDDY, *Defendant in
Error.*

Opinion Filed December 13, 1920.

1. Plaintiff having been employed by defendant for a stated
period, before its expiration, received a communication from
him as follows: "As I promised Harry's wife I would give
him the management of the store on his return before I em-
ployed you can you take the night shift and arrange to trade
nights with him occasionally. As you know the position we
are placed in with old employees I have no other choice than
to ask this of you." Plaintiff interpreted this communica-
tion as a discharge and thereupon quit the service of defend-
ant and sued for the amount of salary which he would have
been entitled to had he rendered the service for the period
of his employment. *Held*, that the language employed in the
communication is not reasonably susceptible of the inter-
pretation given it by plaintiff and that he is not entitled to
a recovery upon the theory that it amounts to a discharge.

2. Where a verdict in plaintiff's favor is unsupported by the
evidence it is the duty of the trial court to set it aside upon
motion, and a failure to do so is error, for which the judg-
ment will be reversed.

A Writ of Error to the Circuit Court for Dade County;
H. Pierre Branning, Judge.

Reversed.

*Atkinson & Burdine*, for Plaintiff in Error;

*D. J. Heffernan*, for Defendant in Error.

WEST, J.—In an action upon a contract of employment
there was a verdict and judgment for plaintiff. Motion

for a new trial was denied and defendant took writ of error.

The declaration contains several common counts in assumpsit and a special count on the contract in which it is alleged in substance that the defendant employed the plaintiff as manager of a cigar store in the city of Miami for a fixed period of time at a given salary per month; that plaintiff performed the duties assigned him as such manager and in all respects complied with the contract of employment; that defendant, without notice and disregarding his obligations under the contract, discharged the plaintiff, and although demand has been made therefor payment of the salary due under the contract has not been made except in part, leaving a balance due plaintiff for which he sues.

Pleas of the general issue to the common counts were filed and a special plea was filed in which it is averred that defendant did not discharge the plaintiff, but, on the contrary, plaintiff of his own accord quit the employment of defendant.

The overruling of defendant's motion for a new trial is assigned as error. Among the grounds of this motion is one that the verdict is contrary to the evidence and another that the verdict is unsupported by a preponderance of the evidence.

It appears from the testimony that the position given to plaintiff by defendant had been formerly held by one who was then in the military service of the United States Government; that during the period for which plaintiff alleges he was employed this former employee returned to Miami; that upon his return plaintiff received a communication from the defendant, which, omitting the formal commencement and conclusion, is as follows:

53—Vol. 80

"As I promised Harry's wife I would give him the management of the store on his return before I employed you can you take the night shift and arrange to trade nights with him occasionally. As you know, the position we are placed in with old employees I have no other choice than to ask this of you." This communication plaintiff, according to his testimony, interpreted as a discharge and thereupon quit the service of defendant.

At the trial the only proof offered was the evidence of the plaintiff and the evidence of the defendant. The material portions of plaintiff's evidence is as follows: "I am the plaintiff in this case. I live at Buena Vista. I am presently engaged in the Retail Fish Business. I worked for Mr. C. W. Hill, who does business as Hill Brothers. He first offered me the position of manager at the 12th street store for a period of one year at a salary of $125.00 per month, payable $100.00 at the end of each month; he to hold back $25.00 each month for a period of six months. I told Mr. Hill I would consider the matter and talk it over with my wife, also my employer, The Bowers Southern Dredging Company. I talked the matter over with the Bowers Southern Dredging Company, and after a few days' illness I concluded it would be better to accept employment for night work than to continue outside in all kinds of weather during the coming winter months. I sent a message to him that I would see him as soon as I got up out of bed, and in about ten days after our first conversation, he wanted to change the contract to six months, which was agreeable to me. The terms were $125.00 per month, of which $100|00 would be paid in cash and the balance of $25.00 per month at the end of the contract. I left him with the understanding that I was to work for him for six months and he would let me know

the day I was to start working. After accepting Mr. Hill's offer I was offered employment with the Bowers Southern Dredging Company at Cutler at the wages of $5.00 per day, with room and board, for an indefinite period; but I turned it down because I had agreed to go to work for Mr. Hill. A few days later the work in which I was engaged slacked off and I was laid off and went to Mr. Hill and told him about it. It was then agreed between Mr. Hill and myself that I would go to work on November 11th, which was the day the armistice was signed. When I got to the door to take my turn the door was locked on account of the holiday and I did not know when it was to be opened. Just before this it was agreed that I was to take the afternoon and night shift until he got more help and then I was to arrange so that I would not have to work at night, because I wanted to be at home nights with my family, as they live quite a distance from the store. After I waited for some time Mr. Hill came along, gave me the key and told me to open up, which I did. I worked on the night shift for two weeks, and then Mr. Hill hired Harry McNeil, after which I immediately changed to day shift. I needed some dental work done, so changed back with Harry for a few days. When I tried to change back again to day shift, I received a letter from Mr. Hill, and from the way it read, I concluded it was a discharge. * * * I came down town the next morning, but he could not be found. As soon as I could, I talked to him and showed him the check for $100.00 that he had given me a few days before. I then told him that I interpreted his letter as a discharge and asked him for my money in full. There was nothing said at that time. I simply waited for about an hour and then he gave me check for something over $130.00, I don't remember the exact amount. It was in full payment to date. I had no

reason to believe that the store was being run in an unsatisfactory manner, as he had made no complaint to me."

So much of the testimony of the defendant as is material for a proper understanding of the case is as follows: "My name is C. W. Hill and I am the defendant in this cause. I have no partners in my busness, but use the firm name of Hill Brothers merely as a trade name. I am engaged in the tobacco business, wholesale and retail, in Miami, Florida, and also operate cold drink stands in connection with the cigar and tobacco business. I own and operate three cigar stores in Miami, Florida; one on Avenue D, one on Twelfth Street, and one on the corner of Avenue C and Eleventh Street. During the year 1918 I became short of help on account of several of my employees going into the military service of the United States and I found it difficult to get competent men to replace them. In the fall of 1918, I don't remember the exact time, I talked with Mr. Peddy, the plaintiff, about taking a position at the Twelfth Street store. I don't remember whether I approached him or he approached me, but we talked the matter over and I told him if he wanted to work for me I would give him $100.00 per month and if he would stay six months with me, I would give him $25.00 per month additional, payable at the expiration of the six months period. I made the proposition in this way because he had quit me once before and I offered the $25.00 per month additional provided he remained six months. I don't know anything about his contract with the Bowers Dredging Company, but I believe he reported for duty on the 11th of November, 1918; the day the armistice was signed. I did not employ him as manager of the Twelfth Street store. I manage my own business and do not have managers for any of my stores. I have never had a manager for any of the

stores. I did not make any arrangement with the plaintiff as to his hours or what shift he was to take. I certainly expected him to work as directed by myself and to take any shift required. Shortly after Mr. Peddy went to work Harry McNeal, a former employee of the store, returned from the service and I gave him work at the Twelfth Street store. When McNeal went away, he had the day shift in the store. He applied to me for his old position and so I wrote the plaintiff the note filed in evidence as plaintiff's Exhibit 'A,' which speaks for itself. I wrote this note late one night when I was all tired out and inadvertently used the word 'management.' I do not know why I used this term, as no one had the management of the store except myself. The contract of employment between the plaintiff and myself was verbal and went no further than to give the plaintiff employment and to fix the wages or salary. The plaintiff had worked for me in the same cigar store before and knew what the duties were and what would be required of him. I did not write the note as a discharge or to vary the terms of the employment, but merely wanted to see if the hours of work between Peddy and McNeal could be satisfactorily adjusted. I did not deliver the note to the plaintiff, but left the same on his desk and presumed that he found it the next morning. I was surprised when I found that the plaintiff had quit the store. I had given the plaintiff his check for $100.00 for a month's work, which he brought to me and asked if I thought that was right. He contended that he would have $125.00 per month and asked me to settle with him for the full time he had worked. By the terms of the employment he was not entitled to the additional $25.00 per month, because he quit before the six months was up, but rather than have any dispute about the matter I agreed to pay him for

his full time at $125.00 per month. In fact, I believe there was an error in the calculation and that he received more than was coming to him at that rate." The defendant here offered in evidence paid check for $138.00, made by defendant payable to the plaintiff on the Bank of Bay Biscayne, bearing plaintiff's endorsement and stamped "paid."

This evidence is not sufficient to support a verdict of recovery by plaintiff. He mistakenly, we think, interpreted as a discharge the communication addressed to and received by him from defendant. A more reasonable interpretation would be that it was intended as a suggestion for an amicable adjustment of the hours of service between plaintiff and another employee of defendant in the store in which they were both employed, and the testimony of the parties tends to confirm this view. The rule here is that where a verdict in plaintiff's favor is unsupported by the evidence and is against the weight and preponderance of the evidence, it is the duty of the trial court to set it aside upon motion, and a failure to do so is error for which the judgment will be reversed. Silcox v. Corsa, decided this term; Dickerson et al v. Lankford, 69 Fla. 127, 67 South. Rep. 807; C. H. & N. R. R. Co. v. Burwell & Hillyer, 56 Fla. 217, 48 South. Rep. 213.

The question is not presented by the pleadings, but it appears from the evidence that after the termination of the employment of plaintiff by defendant a settlement was made with and accepted by the plaintiff in which he received payment for the service rendered by him to defendant.

The judgment will be reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.